**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

JAMES W.,

                    Plaintiff,

    v.                                                        8:20-CV-954
                                                                      (DJS)

KILOLO KIJAKAZI, *Acting Commissioner of Social Security*,[1]

                    Defendant.
_____

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| SCHNEIDER & PALCSIK<br>Attorney for Plaintiff<br>57 Court Street<br>Plattsburgh, New York 12901 | MARK A. SCHNEIDER, ESQ. |
| U.S. SOCIAL SECURITY ADMIN.<br>OFFICE OF REG'L GEN. COUNSEL<br>Attorney for Defendant<br>J.F.K. Federal Building - Room 625<br>15 New Sudbury Street<br>Boston, Massachusetts 02203 | LISA G. SMOLLER, ESQ. |

**DANIEL J. STEWART**
**United States Magistrate Judge**

---

[1] Kilolo Kijakazi is now the Acting Commissioner of Social Security and is substituted as Defendant here pursuant to FED. R. CIV. P. 25(d). The Clerk is directed to modify the docket accordingly.

**MEMORANDUM-DECISION AND ORDER[2]**

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) seeking review of a decision by the Commissioner of Social Security that Plaintiff was not disabled. Dkt. No. 1. Currently before the Court are Plaintiff's Motion for Judgment on the Pleadings and Defendant's Motion for Judgment on the Pleadings. Dkt. Nos. 13 & 16. Each party submitted additional briefing. Dkt. Nos. 19 & 22. Plaintiff's Motion for Judgment on the Pleadings is granted and Defendant's Motion is denied.

## I. RELEVANT BACKGROUND

### A. Procedural History

Plaintiff applied for supplemental security income on May 18, 2018. Dkt. No. 10, Admin. Tr. ("Tr."), p. 16. Plaintiff alleged disability based upon chronic obstructive pulmonary disease, radiculopathy, degenerative disc disease, arthritis, obesity, diverticulitis, depression, anxiety, and high blood pressure. Tr. at p. 270. He alleged a disability onset date of September 22, 2016. Tr. at p. 279. Plaintiff's application was initially denied on August 31, 2018, after which he timely requested a hearing before an Administrative Law Judge. Tr. at pp. 110-14 & 135. Plaintiff appeared at a hearing before ALJ Andrew J. Soltes, Jr. on August 8, 2019 at which Plaintiff and vocational expert ("VE") testified. Tr. at pp. 30-75. On August 29, 2019, the ALJ issued a written

---

[2] Upon Plaintiff's consent, the United States' general consent, and in accordance with this District's General Order 18, this matter has been referred to the undersigned to exercise full jurisdiction pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. *See* Dkt. No. 5 & General Order 18.

1

decision finding Plaintiff was not disabled under the Social Security Act. Tr. at pp. 16-25. On August 3, 2020, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Tr. at pp. 1-6.

## B. The ALJ's Decision

In his decision, the ALJ made the following findings of fact and conclusions of law. First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the date of his application. Tr. at p. 18. Second, the ALJ found that Plaintiff had the following severe impairments: "chronic obstructive pulmonary disease (COPD); radiculopathy; degenerative disc disease; arthritis; obesity; diverticulitis; depression; anxiety." *Id.* Third, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings"). Tr. at pp. 18-20. The ALJ then found that Plaintiff has the residual functional capacity ("RFC") to perform sedentary work except:

> he can frequently finger and handling; occasionally stoop, crouch, climb ramps and stairs, and use foot controls; never kneel, crawl, or climb ladders, ropes, or scaffolds; never work at unprotected heights; must avoid concentrated exposure to dust, fumes, gases, and other pulmonary irritants; and must avoid extreme temperatures. The claimant is limited to unskilled, low stress occupations defined as: simple, routine tasks; basic work-related decisions; and rare changes in the workplace setting; and limited to occasional interaction with the public and frequent interaction with coworkers and supervisors.

Tr. at p. 20. Next, the ALJ found that Plaintiff could not perform his past relevant work. Tr. at p. 24. Finally, the ALJ went on to find that there was also other work existing in

significant numbers in the national economy that Plaintiff could perform. *Id.* The ALJ, therefore, concluded that Plaintiff is not disabled. Tr. at p. 25.

## II. RELEVANT LEGAL STANDARDS

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is

whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

### III. ANALYSIS

### A. Plaintiff's Treating Provider

Plaintiff's first argument in support of remand relates to the alleged failure of the ALJ to properly evaluate the opinion of Dr. Racine, a treating doctor. Pl.'s Mem. of Law at pp. 11-17. Plaintiff contends that Dr. Racine's opinions regarding Plaintiff's functional abilities were supported by substantial evidence and should not have been discounted. *Id.* at p. 17.

The parties agree this case is controlled by the new Social Security Administration regulations governing evaluation of medical opinions. Dkt. No. 19 at p.

5

4; Dkt. No. 22 at p. 2. "Under the new regulations, the treating physician rule no longer applies." *Smith v. Comm'r of Soc. Sec.*, 2022 WL 421136, at *10 (S.D.N.Y. Feb. 11, 2022). "Therefore, no special deference is given to the treating physician's opinion." *Id.* (citing, *inter alia*, 20 C.F.R. § 416.920c(a)). The regulations, however, continue to require Defendant to consider many of the same factors previously addressed under the treating physician rule including the supportability and consistency of an opinion with other evidence, the relationship of the medical provider with the patient, and the extent, if any, of a doctor's specialization. *Compare* 20 C.F.R. § 416.920c(a) & (c) *with Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (outlining factors relevant under treating physician rule). Under the new regulations supportability and consistency are "[t]he most important factors." 20 C.F.R. § 416.920c(a).

"In all cases the ALJ is required to provide rationale in the written decision sufficient to allow a reviewing court to conduct an adequate review of his findings." *Pamela P. v. Saul*, 2020 WL 2561106, at *4 (N.D.N.Y. May 20, 2020). "Although under the new regulations the ALJ is not required to give specific evidentiary weight to a particular medical opinion, he is still required to articulate how he considered the medical opinion, including explaining how he considered the 'supportability' and 'consistency' factors." *Jaleesa H. v. Comm'r of Soc. Sec.*, 2022 WL 174337, at *5 (W.D.N.Y. Jan. 18, 2022). "Both supportability and consistency in part require comparison of the medical opinions with other medical sources." *Mark K. v. Comm'r of Soc. Sec.*, 2021 WL 4220621, at *4 (W.D.N.Y. Sept. 16, 2021) (citing 20 C.F.R. §

6

404.1520c(c)(1)-(2)).  A conclusory analysis of these factors "precludes the Court from undertaking meaningful review" of the ALJ's decision.  *Jaleesa H. v. Comm'r of Soc. Sec.*, 2022 WL 174337, at *6; *see also William B. J. v. Comm'r of Soc. Sec.*, 2022 WL 344059, at *5 (N.D.N.Y. Feb. 4, 2022).

The ALJ found Dr. Racine's opinion "not persuasive."  Tr. at p. 23.  In doing so the ALJ found that Racine's opinion was not supported with specific reasoning beyond identifying diagnostic test results, was belied by a generally conservative course of treatment, and was inconsistent with other evidence in the record.  *Id.*  Unfortunately, these findings do not adequately explain the ALJ's conclusions regarding the supportability and consistency of Dr. Racine's opinion to permit meaningful review by this Court.

"The supportability factor measures whether the medical opinion is supported by objective medical evidence and accompanying explanations.  It does not measure whether the medical opinion is supported by a single doctor's findings."  *Darla W. v. Comm'r of Soc. Sec.*, 2021 WL 5903286, at *8 (N.D.N.Y. Dec. 14, 2021).

As to supportability, the ALJ cited a lack of "specific reasoning" beyond reliance on certain test results.  Tr. at p. 23.  The ALJ went on to note that "the existence of abnormal diagnostic studies do not in and of themselves support debilitating restrictions."  *Id.*  The ALJ was correct in this regard.  See *Kayla R. v. Saul*, 2021 WL 911656, at *8 (N.D.N.Y. Mar. 10, 2021) (doctor's notes insufficient to establish physical limitations of injury shown on diagnostic testing); *Flowers v. Comm'r of Soc. Sec.*, 2015

WL 4274961, at *4 (E.D. Mich. July 14, 2015) ("the MRI and the CT scan reports provide no insight into what additional limitations Plaintiff may suffer from based on the diagnoses therein."). On the other hand, this sort of diagnostic testing can provide significant evidence in support of a claim of disability. *See Castano v. Astrue*, 650 F. Supp. 2d 270, 278 (E.D.N.Y. 2009) (noting the importance of such testing in evaluating disability). As a result, the ALJ had the obligation to explain why the medical findings relied upon by Dr. Racine did not support the functional limitations opined by the doctor, not, as he did, merely state the truism that they may not do so.

Regarding consistency, the ALJ stated that Dr. Racine's assessment was inconsistent with Plaintiff's "visit to a spine specialist and Dr. Wassef's examination." Tr. at p. 23. The decision, however, did not identify any specific inconsistencies, making it difficult for the Court to assess his conclusions. *William B. J. v. Comm'r of Soc. Sec.*, 2022 WL 344059, at *5 (noting the lack of actual comparison of the medical opinions in the record). "The consistency factor does not measure whether a medical opinion is consistent with a single other medical opinion - it measures whether the medical opinion is consistent with all medical and nonmedical evidence in a claim." *Darla W. v. Comm'r of Soc. Sec.*, 2021 WL 5903286, at *9 (N.D.N.Y. Dec. 14, 2021). As such, identifying a lack of consistency, but failing to explain the inconsistency in the context of the medical record as a whole prevents meaningful review. This case highlights that difficulty because Dr. Racine's opinion had much in common with Dr. Wassef's opinion. They both, for example, identified limitations in Plaintiff's ability to

8

stand, climb stairs, bend, lift, and sit. Tr. at pp. 431 & 526-527. Dr. Racine clearly opined that Plaintiff had more significant limitations, but it is difficult to assess the purported inconsistency of his view with that of Dr. Wassef when the ALJ also criticized Dr. Wassef's assessment of the limitations as "vague." Tr. at p. 22. It is hard to reconcile, without further explication, the fact that Dr. Wassef's opinion was strong enough to justify discounting the opinion of Plaintiff's treating doctor, but at the same time was so vague that it "undermine[d] the usefulness of the opinion." *Id.*

This failure to properly explain the two most important factors in evaluating the opinion of Plaintiff's treating provider requires remand.

Given that remand is required, the Court feels it appropriate to address one other issue raised by the parties – the ALJ's reliance on Plaintiff's purported "conservative management" as a basis for discounting Dr. Racine's opinion. Contrary to what appears to be Plaintiff's argument, there is nothing wrong with the ALJ considering a conservative course of treatment as one relevant factor in assessing opinions in the record. *Becky Sue H. v. Kijakazi*, 2022 WL 304518, at *2 (N.D.N.Y. Feb. 2, 2022). The ALJ, however, offered no explanation for this conclusion. As with other factors the ALJ considers, he must provide an explanation as to why the course of treatment is deemed conservative. *Medick v. Colvin*, 2017 WL 886944, at *12 (N.D.N.Y. Mar. 6, 2017).

Two factors, in particular, may require additional explanation. First, the ALJ may have relied on his finding that there is "no evidence" Plaintiff pursued the physical therapy he was referred to by his primary care doctor. Tr. at p. 21. While there do not

9

appear to be any physical therapy notes in the record, the record does indicate that Plaintiff told other providers that he had undergone physical therapy without success. *See* Tr. at pp. 480 & 493.  Insofar as this was a relevant consideration for the ALJ, he may wish to further develop the record in this regard.  Second, the ALJ should consider whether an individual who takes four Oxycodone pills a day, *see* Tr. at p. 52, is undergoing a conservative course of treatment.  *See Jazina v. Berryhill*, 2017 WL 6453400, at *6 (D. Conn. Dec. 13, 2017).

### B. Remaining Claims Regarding this Hearing

Plaintiff raises issues about the ALJ's evaluation of his subjective complaints, the impact of a variety of Plaintiff's impairments, taken individually and considered together, and the Plaintiff's conclusion at step five.  Pl.'s Mem. of Law at pp. 17-26.  Each of those issues could be impacted by the ALJ's more fulsome consideration of Dr. Racine's opinion on remand and so the Court does not consider them here.

### C. Reopening of a Prior Claim

Finally, Plaintiff seeks to reopen a previously dismissed claim.  Pl.'s Mem. of Law at pp. 26-27.  He maintains that "the record for the instant appeal constitutes new and material evidence" warranting reopening of his prior claim under 20 C.F.R. §§ 416.1488 & 416.1489.  *Id.*  Plaintiff offers no explanation as to why the mere filing of new claim establishes new evidence regarding a prior claim.  His conclusory claim in this regard is no basis for directing that his prior claim be reopened.  *See Gribensk v. Colvin*, 2016 WL 5137190, at *8 (N.D.N.Y. Sept. 20, 2016).

## IV. CONCLUSION

**ACCORDINGLY**, it is

**ORDERED**, that Plaintiff's Motion for Judgment on the Pleadings is **GRANTED**; and it is further

**ORDERED**, that Defendant's Motion for Judgment on the Pleadings is **DENIED**; and it is further

**ORDERED**, that Defendant's decision denying Plaintiff disability benefits is **REVERSED** and the matter is **REMANDED** pursuant to sentence four of section 405(g) for further proceedings; and it is further

**ORDERED**, that the Clerk of the Court shall serve copies of this Memorandum-Decision and Order on the parties.

Dated: March 8, 2022
      Albany, New York

_____
Daniel J. Stewart
U.S. Magistrate Judge